John Bartosh, Plaintiff-Appellant, v. Edward J. Ryan, Administrator of Estate of Alfred H. Annis, Deceased, Defendant-Appellee.

Gen. No. 10,511.

Opinion filed August 7, 1951. Released for publication August 27, 1951.

HADLEY & LEREN, of Wheaton, and GEORGE R. WARNER, of Aurora, for appellant; CHARLES W. HADLEY, and PALMER LEREN, of Wheaton, of counsel.

THOMAS P. O'MALLEY, of Aurora, for appellee; THOMAS P. O'MALLEY, and J. ROBERT MURPHY, both of Aurora, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

John Bartosh filed a claim in the probate court of Kane county, against the Estate of Alfred H. Annis, deceased in the amount of $6,443.69. This claim is based on a promissory note alleged to have been signed by Alfred H. Annis and made payable to John Bartosh, as of date July 15, 1946. The face of the note was for $6,200. By agreement, the case was transferred to the circuit court of Kane county and a trial by jury was had. The jury found the issues in favor of the defendant, and judgment was entered on the verdict on October 13, 1950. It is from this judgment that the plaintiff has perfected an appeal to this court.

After the claim was filed and the case transferred to the circuit court, Mr. Edward J. Ryan, as administrator of the Estate of Alfred H. Annis, deceased, filed an answer in which he denied that the promissory note was executed by Alfred H. Annis, and denied that it was delivered by Alfred H. Annis, during his lifetime, to John Bartosh, denied that said note was given for any good and valuable consideration, denied that the signature on the note is in the genuine handwriting of Alfred H. Annis, the deceased, denied that any sum whatsoever is due to the claimant, John Bartosh, and denied there is any interest due John Bartosh on said

note, and asked that the claim be dismissed. Practically the only question involved in this suit is whether the signature on the note in question is the true and genuine signature of Alfred H. Annis.

The claimant himself was permitted to testify on his own behalf, and stated that he had worked for Alfred H. Annis in his lifetime, and the note in question was in payment for these services; that he went to a friend and had him draw the note, then he took it to the home of Alfred H. Annis and he signed the note and delivered it back to John Bartosh. There is no question that John Bartosh lived in the home of Alfred H. Annis for a number of years just preceding the death of Mr. Annis.

Mr. Sigmond Bere testified that he was a machinist, notary public and an insurance agent and that John Bartosh came to him and asked him to prepare the note in question; that he did as Mr. Bartosh requested, and handed the note back to Bartosh. That is all that he knew in regard to it.

Several witnesses were called on behalf of the claimant and they testified that they had heard Mr. Annis state that Bartosh had been good to him, and that he intended to take care of him, but these witnesses knew nothing in regard to the note.

Mr. Joy Lenington was called as a witness on behalf of the claimant and testified he was a Lieutenant of Detectives of the Police Department of Aurora; that at one time he was a tenant of Mr. Annis for about three years. Every time he paid his rent to Mr. Annis, he obtained a receipt for it and from seeing these receipts he believed he would know Mr. Annis' genuine signature; that he had seen him write his name about once a month for approximately three years; that in his opinion, the signature on plaintiff's note, Exhibit No. 1, is the genuine signature of Mr. Annis. This is the substance of the evidence given on behalf of the claimant.

In opposition to this testimony, the defendant introduced evidence and called Glenn W. Lampton who was a car dealer who stated that he had been acquainted with both Mr. Annis and John Bartosh; that he frequently had conversations with Mr. Bartosh. He stated that Mr. Bartosh wanted him to come up and testify, to which he replied that he was too busy there in his garage and Mr. Bartosh said, "He would make it worth my while if I came up to testify," and I said, "I could only tell the truth." He said, "If the case was favorable to him, that he would give him, (Lampton,) $100.00."

Mr. Edward J. Ryan testified that he was the administrator of the estate by appointment of the probate court of Kane county; that he was also the fire marshal of Aurora, Illinois, and that he had known Mr. Annis for about forty-two years and was very intimate with the family; that Annis' first wife was the aunt of the witness. After detailing his visits to the Annis home and seeing Mr. Bartosh, he stated that on April 27, 1947, he finished making an inventory of the Annis property, and he told Mr. Bartosh that he would have to leave the premises; that the owner of the building wants the house; that at that time John Bartosh looked over at the house at 168 Rever Street, the former home of Alfred H. Annis and said, "That old S. B., Mr. Annis said he would give me that house." To which Ryan replied, "John you have one week to get out of here, we want the property."

Francis McMahon, a member of the fire department of Aurora said he was well acquainted with John Bartosh while he resided at the home of Mr. Annis; that he had a conversation with him on May 28, 1947. Mr. John Kinney was also present and in talking about Mr. Annis, Bartosh said, "The old man, he said he would take care of me and I got "S" the word that he used. I would not like to state the words that couldn't be repeated here, there are ladies present."

217

John Kinney was called and corroborated Mr. Mc-Mahon in what he said transpired in the conversation with John Bartosh. He stated that he recalled the conversation that was had and in reply to what it was he stated, "the only thing that stands out in my mind was in regard to Mr. Annis' promise to take care of him, and he said all he got out of it was the word, a profane word, and I don't know whether the Court wants me to use it. The same word Mr. McMahon used."

Vern James was called and testified that he had been a tenant for a number of years of Mr. Annis, and that he had purchased the property from Mr. Annis on a contract. He identified the signature of Alfred H. Annis on the original and copy of the contract. This contract was admitted in evidence for the purpose of showing the genuine signature of Mr. Annis.

Mr. Herbert J. Walter whose residence is Wheaton, Illinois, who qualified as an expert, as an examiner and photographer of handwriting, said he had been engaged in this business for thirty-five years and devotes his full time to this matter; that he had taken the signature, Alfrid H. Annis, on the note in question and compared it with the signature that had been identified as the true signature of Alfred H. Annis; that he had photographed the same and enlarged them for the purpose of comparison. Over the objection of the claimant, these photographs were admitted in evidence and permitted to be taken to the jury room by the jurors. He testified in his opinion that the signature, Alfrid H. Annis on the note in question, was not the true and genuine signature of Alfred H. Annis. This is in substance the testimony in the case.

 It is first insisted that the court erred in failing to give to the jury the third refused instruction tendered by the plaintiff. It is as follows: "The Court instructs the jury that the opinions of experts, concern-

218

ing the genuineness of handwriting, are at best, weak and unsatisfactory. That there is much room for error and great temptation to form opinions favorable to the party calling the witness. The opinion of an expert, concerning the genuineness of handwriting, may be of value only where it calls attention to facts which are capable of verification by the Court and where the opinion is based upon such facts is in harmony therewith.''

This instruction was taken nearly verbatim from what the court said in the case of *In re Will of Barrie,* 393 Ill. 111, page 123, which was a quotation from an earlier case. The plaintiff cites no authority where such an instruction has ever been given similar to this one. In the case of *Norkevich v. Atchison T. & S. F. Ry. Co.,* 263 Ill. App. 1, a similar question was presented to the Appellate Court of the First District, and the instruction in question had been copied from what the Supreme Court of the United States had said in the case of *Looney v. Metropolitan R. Co.,* 200 U. S. 480. The Appellate Court stated: ''Our Supreme Court, on a number of occasions, has commented upon the practice of converting sentences in the opinion of the Court into instructions, and has held that it is a bad practice and one that often leads into serious error.'' It is difficult to understand how the last sentence of this refused instruction would be of any benefit whatsoever, to the jury in their deliberations in arriving at a verdict. We think the court properly refused to give this instruction. We are also of the opinion the court did not err in giving defendant's instruction No. 16.

It is next insisted that the court erred in permitting the enlarged photographs of the signatures of the handwriting on the note and of the genuine signatures of Alfred H. Annis to be exhibited to the jury while Mr. Walter was testifying, and also permitting the jury to take the photographs to the jury room

219

while considering their verdict. In *Schubert v. Schubert,* 168 Ill. App. 419, it is stated: "The will and the note both being properly in evidence, we are of the opinion that it was proper to permit enlarged photographic copies of these signatures to be made and introduced in evidence to illustrate the theories of the expert witnesses who testified to the similarity of or the differences in these signatures." *Howard v. Ill. Tr. & Sav. Bank,* 189 Ill. 568. No authority has been cited to sustain this contention, and it is our conclusion that the court properly permitted these exhibits to be taken to the jury room for their consideration.

■ The photographs in question and note have been certified to this court for our examination. From the testimony of the various witnesses and our own examination of these signatures, it is our conclusion that the jury properly found that the note in question did not bear the true and genuine signature of Alfred H. Annis, deceased.

■ Complaint is made in regard to the court's allowing the witness, Lampton, to testify as an attempt to impeach what Bartosh had said while he was on the witness stand. From an examination of this evidence, we find that this was not the purpose for which this evidence was introduced, but to show an attempt on the part of the plaintiff to influence this witness to testify on his behalf. This was a question of fact for the jury to determine whether it had any bearing on the testimony of the plaintiff himself. We think this evidence was properly admitted.

■ It is finally insisted that the argument to the jury by the defendant's attorney was improper and was an appeal to the prejudice and passion of the jury to influence them in their verdict. We have examined the arguments to the jury of both the plaintiff's and defendant's counsel, and while some of the arguments on both sides are probably objectionable, each appears

220

to be as objectionable as the other, and under such circumstances we cannot say that the argument of defendant's attorney is such that a verdict of the jury should be set aside because of it.

On the whole we think that the issues were fairly presented to the jury, and they having found in favor of the defendant, we would not be justified in setting aside the verdict in this case. The judgment of the trial court is affirmed.

*Judgment affirmed.*