CARL E. STROM, Plaintiff-Appellee, *v.* CHARLES C. LIPSCHULTZ *et al.*, Defendants-Appellants.

(No. 71-154;

Second District—May 1, 1972.

Rathje, Woodward, Dyer & Burt, of Wheaton, for appellants.

Mirabella, Facktor, Mirabella & Kincaid, of Wheaton, for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiff, a general contractor, brought an action for extra work performed and for construction of a pool and cabana which were not included in the contract price of the home built for defendants. Defendants appeal from a jury verdict of $12,000 in favor of plaintiff.

On appeal, defendants contend that: 1) plaintiff cannot recover for orally requested extras because a)—contractual provision limits recovery to items for which written change orders were provided, and b)—such recovery is barred by the statute of limitations for oral contracts; 2) the

trial court incorrectly submitted the issue for damages for the pool and cabana to the jury since a)—the weight of the evidence established that costs of the pool and cabana were already paid or that, in the alternative, defendants should have been given a credit of $6,720 and b)—the statute of limitations barred work done before May 23, 1963; 3) the court erred in refusing to grant a mistrial when plaintiff's counsel made a prejudicial statement while interrogating a juror and when an unresponsive answer was volunteered by plaintiff; 4) the jury was improperly instructed.

Defendants secured the services of an architect, one Milton Schwartz, to draw plans for a house to be built on defendants' property. Plaintiff was chosen as general contractor after the revised plans had been let out for bid. On March 3, 1962, a construction agreement was entered into between the parties. The contract price totalled $97,517.00. Defendants moved into their home on December 12, 1962.

Article 8 of the general conditions in the agreement provided that any changes in work ordered by the owner be in writing and that contractor's claims for extra costs also be in writing before executing the work. Another article designated the architect as the owner's representative.

Plaintiff's recovery was, in part, for alleged extras he put into the home. A list of 35 claimed extras was submitted into evidence; plaintiff admitted receiving written change orders for only two of the items but asserted that either defendants or the architect gave verbal authorization for the others. The architect testified that he only ordered extra work which had first been requested or approved by defendants. As plaintiff's witness, he stated that he had approved the inclusion of the itemized extras claimed by plaintiff and had determined their value, but in the course of examination, he decided that three of the listed items were incorrectly included as extras and two of the amounts were incorrect and should have been lower.

Defendant admitted liability for the two items on the list of extras for which written change orders were signed and for a third item (wooden workbenches) which, he admits, was orally requested, but stated that he was unaware that the other thirty-two items were considered extras, that he never requested their inclusion in the house and denied liability for them without written change orders.

Both parties agree that the pool and cabana were never part of the written contract, although it was always contemplated that they would be constructed. According to defendant's testimony, he agreed to pay $6,000 for a pool which was big enough to swim in and had a shallow end. He claimed he never saw specifications, or asked for the pool to be a certain size. Plaintiff testified that he originally gave defendant a

$6,000 quotation for a twenty by forty footpool, but when defendant later requested a larger pool with an additional shallow extension and cabana, he agreed to pay on a time and material basis. When defendants moved into their home, the pool was substantially completed except for the mechanical hookup which was done in late spring or early summer of 1963.

■■ Defendants' first argument is that recovery for the extras should not have been allowed as a matter of law, asserting that no recovery is possible unless the extra work was authorized by written change orders as provided in Article 8 of the contract. It was, however, possible for defendants, by a course of conduct, to waive the protection afforded by Article 8 and become liable for extras which were verbally ordered. (*Keim Builders Inc. v. Webb* (1971), 1 Ill.App.3d 375; *Salomon-Waterton Co. v. Union Asbestos & Rubber Co.* (1931), 263 Ill.App. 583, 591; *Concord Apart. House Co. v. O'Brien* (1907), 228 Ill. 360, 369.) The evidence being contradictory on the question of whether defendants orally authorized the extras, it is apparent that the jury chose to believe plaintiff and the architect who maintained that defendants were aware of extras being included in the construction and had authorized their inclusion. Their testimony, taken with the fact that the architect was expressly made the defendants' agent, was sufficient to establish defendants' waiver of the provision requiring written change orders. While it is clear that the contractor has the burden of proving the essential elements of recovery for extras, (*Watson Lumber Co. v. Guennewig* (1967), 79 Ill.App.2d 377, 389-390), the plaintiff sustained that burden in the present case.

■■ Defendants argue that even if Article 8 was waived and because any verbal requests should be treated as oral contracts, recovery for the extras was barred by the five year Statute of Limitations (Ill. Rev. Stat. 1961, Ch. 83, Sec. 16). Article 8 of the contract provided that, "The Owner may order changes in the work, the Contract Sum being adjusted accordingly * * *," and that all such changes be in writing. The quoted clause indicates that changes were anticipated within the written contract and that changes were not to be treated as separate contracts. (See, *Mueller v. Rosen* (1899), 179 Ill. 130, 133.) Waiver of the protection afforded by the provision for written change orders did not waive the entire contract. It has been held that a contract is controlling where the extras were of the same character as the work and materials named in the contract and incidental to the main work. (*City of Elgin v. Joslyn* (1891), 136 Ill. 525, 531.) While there are thirty-five extras claimed in the present case, it is noteworthy that the architect testified that it would not be unusual to have approximately a hundred changes in a

house such as this. The extras here were incidental to the contractual work of construction of defendants' home and not a substantially different undertaking. We feel that, under these circumstances, the extras are to be treated as part of the written contract governed by the ten year Statute of Limitations (Ill. Rev. Stat. 1961, Ch. 83, Sec. 17).

■■ Defendants next contend that it was error to submit to the jury the issue of damages relative to the pool and cabana. As previously noted, defendants stated that they had agreed to pay the fixed price of $6,000 for the pool and cabana, whereas plaintiff asserted that the work was done on a time and material basis. Defendants maintain that they delivered a $3,000 check as half payment on those costs and then gave another $3,720 in cash (without receiving a receipt) as a compromised complete payment. Defendants conclude that the overwhelming weight of the evidence substantiates their position and, since they should have been given a credit of $6,720, the verdict of $12,000 is excessive. The jury, however, was entitled to believe plaintiff's testimony that the total sum received, in either cash or check, toward the cost of the pool and cabana was $3,720. This court has reviewed the entire record and concludes that the evidence did not so overwhelmingly favor defendants on the issue of the price to be paid for the pool and cabana as to demand its withdrawal from consideration of the jury. Rather, the evidence was conflicting and therefore a proper matter for determination by the jury. Moreover, there being a question of fact as to the amount paid by defendants toward the pool and cabana, the verdict cannot be deemed excessive on the basis of defendants' claim to a credit of $6,720.

■■■ Defendants argue that work done on the pool and cabana prior to May 23, 1963, was barred by the five year statute of limitations for oral contracts. This argument fails, however, as the suit was brought less than five years after completion of all the work. Where, as here, the agreement is for a continuous piece of work, the limitations period does not begin to run until the completion of the work. (*O'Brien v. Sexton* (1892), 140 Ill. 517, 523.) The testimony for both parties was that the final mechanical hook-up of the pool did not occur before June of 1963. Since the present suit was filed on May 23, 1968, there is no violation of the statute of limitations.

■■ Defendants also claim that the court twice erred in failing to grant their motions for mistrial, asserting:

1) that declaration of a mistrial was mandatory when, during the *voir dire,* they were prejudiced by plaintiff's attorney having asked a juror if plaintiff's speech impairment (suffered as the result of a stroke) would affect the juror's determination. Defendants objected to this question and moved for a mistrial. A discussion was held in

chambers, the court considered counsels' arguments, denied the motion, but admonished the veniremen to disregard any reference to, or inference from, the state of plaintiff's health.

2) that a mistrial should have been granted because of prejudice resulting from plaintiff's unresponsive answer, "Q. * * * Why did you take off the plumbing bill?" "A. They don't want to wait for the money, so they sue Lipschultz."

We cannot say that in either instance the refusal to grant a mistrial was so prejudical to defendants as to constitute reversible error.

■■■■ Defendants finally contend that the court's refusal of four of their instructions deprived them of their right to have the jury instructed on their theories of defense. We find that the substance of these were covered in two other instructions given. It was not necessary for the court to give the same proposition of law in different language. (*Lau v. West Towns Bus Co.* (1959), 16 Ill.2d 442, 452.) Furthermore, defendants admit that the excluded instructions were taken from the language of *Watson Lumber Co. v. Guennewig, supra.* It has been held that the giving of instructions taken from the language of court decisions is an undesirable practice. (*Norkevich v. Atchison, T.&S.F. Ry. Co.* (1931), 263 Ill.App. 1, 16.) See also, *Bartosh v. Ryan* (1951), 344 Ill.App. 214, 219.

For these reasons, judgment is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.